UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK A. GYETVAY,

Plaintiff,

v. Case No.: 2:22-cv-571-JLB-KCD

THE UNITED STATES
DEPARTMENT OF JUSTICE,

Defendant.
_______________________________/

**ORDER**

Before the Court is Defendant the Department of Justice's Second Motion to Amend Scheduling Order. (Doc. 26.) Plaintiff Mark Gyetvay has responded in opposition to the request. (Doc. 27.) For the reasons below, the motion is granted in part and denied in part.

## I. Background

Over two years ago, Gyetvay submitted a FOIA request to the Tax Division of the United States Department of Justice, seeking 22 categories of records. (Doc. 22-1 at 11-17.) Within days, the Tax Division acknowledged receipt and informed Gyetvay that the request was complex because the records were likely voluminous, they concerned a criminal matter, and the Tax Division had to coordinate its response with other agencies. (*Id*. at 18-20.) The

Tax Division also told Gyetvay that his request would be processed on a first-in, first-out basis. (*Id*. at 19.)

Six months passed without responsive documents. (Doc. 2 ¶ 16, 20.) So Gyetvay sued to compel disclosure under the Freedom of Information Act ("FOIA"). The Tax Division was ordered to deliver all responsive, non-exempt documents by September 25, 2023. (Doc. 18 at 2.)

The Tax Division did not meet this deadline but moved to amend the schedule. (Doc. 22.) It explained that Gyetvay's request was complex, it underestimated the number of responsive documents, had other matters to attend to, and did not employ enough staff to process the FOIA requests it received. (*Id*. at 2-4.) The Tax Division asked the Court to extend the deadline to process Gyetvay's request sixteen months, to January 2025. (*Id*. at 1.) The Court granted the motion in part, extending the deadline six months to March 29, 2024. (Doc. 24.)

On March 29, the Tax Division produced no documents. Instead, it again asked the Court to extend the deadline to January 2025. (Doc. 26 at 1.)

## II. Standard

Typically, FOIA allows an agency twenty days to respond to a request. 5 U.S.C. § 552(a)(6)(A). Once suit is filed, FOIA states that the court may retain jurisdiction and allow the agency more time to complete its review of the records "[i]f the Government can show exceptional circumstances exist and

that the agency is exercising due diligence in responding to the request." *Id.* § 552(a)(6)(C). Exceptional circumstances do not "include a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii).

"[R]outine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." *Elec. Priv. Info. Ctr. v. F.B.I.*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013). "Accordingly, it is not sufficient that an agency receives a high number of FOIA requests or has a large backlog of requests to which it must respond." *Daily Caller News Foundation v. F.B.I.*, 387 F. Supp. 3d 112, 116 (D.D.C. 2019). "Instead, an agency must show that the number of requests received in the relevant period was truly unforeseen and remarkable." *Id.* Apart from the statute, courts have held that other circumstances are relevant considerations, including "an agency's efforts to reduce the number of pending requests, the amount of classified material, [and] the size and complexity of other requests processed by the agency." *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007).

**III. Discussion**

The Tax Division blames its delay on three "exceptional circumstances": (1) Gyetvay's request is "unusually large or complicated," (2) it has been overwhelmed with a large volume of FOIA requests, and (3) another court has

ordered it to process a different outstanding request. (Doc. 26 ¶ 8-11.) In her Second Declaration, which is attached to the motion, Carmen Banerjee, Senior Tax Division Counsel for FOIA and Privacy Act Matters, offers a fourth reason for the extension: staff shortages. (Doc. 26-1 ¶ 28-31.) These arguments are substantially similar to those raised the last time the Tax Division sought an extension. (*Compare* Doc. 22 *and* Doc. 22-1 *with* Doc. 26 *and* Doc. 26-1.)

The primary issue seems to be a lack of staffing. Banerjee is "the only attorney in the Tax Division processing FOIA requests." (Doc. 22-1 ¶ 5.) She supervises the Division's FOIA/PA Unit, which consists of one government information specialist who processes requests. (Doc. 22-1 ¶ 5, Doc. 26-1 ¶ 28.) However, that employee has other duties. (Doc. 22-1 ¶ 5.) So they trained "a non-FOIA professional in CTS-E in FOIA processing." (Doc. 22-1 ¶ 6.) But she recently left. The Court sympathizes with Banerjee; however, the Tax Division's failure to hire enough staff to review incoming FOIA requests is not an exceptional circumstance justifying more time. It is a self-inflicted handicap.

The Tax Division seemingly has plenty of resources.[1] But as best the Court can tell from Banerjee's declaration, it does not employ a full-time employee, or the equivalent, to process incoming FOIA requests:

> Each FY annual report requires Department components report on the number of full-time personnel or full-time equivalent [who] processed FOIA requests during that FY. Accounting for the FOIA Team and the professionals throughout the Division it worked with to process the FOIA requests, in FY 2022 the *Tax Division's full-time equivalent was .079 out of 100 where 100 represents the equivalent of one full-time employee.*

(*Id.* ¶ 11 (emphasis added).) No wonder there is such a backlog. While the Court cannot direct the Tax Division's allocation of resources, it will not accept delays resulting from its apparent failure to staff these matters.

The Tax Division also believes exceptional circumstances arise because it "had been court-ordered to process over 500,000 records" in *Stonehill v. U.S. Dep't of Justice, Tax Division* which "has limited the agency's ability to respond to other FOIA requests." (Doc. 26 ¶ 11.) The Court does not agree. The Tax Division had plenty of notice it would need to process both requests. It may not prioritize one court order at the expense of another. When a deadline is set, the Tax Division must endeavor to meet it.

[1] U.S. Department of Justice, FY 2023 Budget and Performance Summary, Tax Division (available at https://www.justice.gov/doj/fy-2023-budget-and-performance-summary); FY 2024 Budget and Performance Summary, Tax Division (available at https://www.justice.gov/doj/fy-2024-budget-and-performance-summary); U.S. Department of Justice, FY 2025 Budget and Performance Summary, Tax Division (available at https://www.justice.gov/doj/fy-2025-budget-and-performance-summary).

Next, the Tax Division argues exceptional circumstances are present because it "has been overwhelmed with FOIA requests." (Doc. 26 ¶ 9, Doc. 26-1 ¶ 32-35.) According to Banerjee, the Tax Division received 136 FOIA requests between May 2, 2023, and March 25, 2024, which are contributing to a backlog. (Doc. 26-1 ¶ 32-35.) But the Tax Division has not shown these later-filed requests justify another extension. "[A] high number of FOIA requests" or "large backlog of requests," without a showing that they are "truly unforeseen and remarkable," does not constitute exceptional circumstances. *Daily Caller News Foundation*, 387 F. Supp. 3d at 116. Neither the Tax Division's motion nor Banerjee's declaration show that the 136 requests the Tax Division received after Gyetvay's, or the resulting backlog, were unforeseen or remarkable. (Doc. 26-1 ¶ 28-35.)

At any rate, those requests were received more than a year after Gyetvay's. (*Id.* ¶ 32-33.) According to the Tax Division's motion, it "respond[s] to requests on a *first come, first served basis*, within a two-tiered structure of simple FOIA requests and complex FOIA requests." (Doc. 26 ¶ 13 (emphasis added).) Such a scheme generally satisfies the "due diligence" requirement. *Cohen v. F.B.I.*, 831 F. Supp. 850, 854 (S.D. Fla. 1993). But the processing report shows the Tax Division has resolved eighty-five of the 136 FOIA requests filed after Gyetvay's. (Doc. 26-1 ¶ 33-35.) Seventeen of those were designated "complex" and should have been on the same track as his request.

(*Id.*, Doc. 26-2.) If the Tax Division were proceeding on a first-in, first-out basis, those requests should have been addressed after Gyetvay's. (Doc. 26 ¶ 13.) Thus, it is unclear whether the Tax Division exercised due diligence in responding to Gyetvay's request.

Finally, the Tax Division argues the breadth and complexity of Gyetvay's request presents an exceptional circumstance. (Doc. 26 ¶ 10.) It cites *Open America v. Watergate Special Prosecution Force* for the proposition that a FOIA request "which consisted of over 38,000 pages, was a massive quantity of pages that qualified as an unusually large or complicated FOIA request, creating exigent circumstances[.]" (*Id.* ¶ 4.) According to Banerjee, there are 166,968 pages of potentially responsive documents here. (Doc. 26-1 ¶ 15.) If so, this case concerns significantly more documents than *Open America*.

Assuming the volume of documents responsive to Gyetvay's request presents an "exceptional circumstance," there are critical distinctions between the FBI's efforts in *Open America* and the Tax Division's efforts here. Most notable is the agencies' divergent approaches to resource allocation. In *Open America*, the FBI employed at least 191 people to process FOIA requests and used specialized teams to review complex or expansive requests. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 612, 613 (D.C. Cir. 1976). In stark contrast, the Tax Division uses the equivalent of less than one-tenth of an employee to process FOIA requests. (Doc. 22-1 ¶ 11.) While Banerjee and

her team's productivity has increased in the past six months, the Tax Division is not yet halfway through its first-level review *two years* after Gyetvay filed his request. (Doc. 26-1 ¶ 14-16.) That timeline can hardly be described as diligent.

Gyetvay's request has been outstanding for more than two years. "If [the Tax Division] were provided the additional time it requests, the Court would bless a three-year clock for completion of the FOIA request. That is a bridge too far." (Doc. 24 at 6.) The Tax Division's failure to comply with the Court's order does not stem from exceptional circumstances that have overcome its exercise of due diligence. Rather, it seemingly results from procrastination and a self-inflicted handicap.

The Court recognizes that the Tax Division cannot currently produce the overdue documents. (*See* Doc. 26-1 ¶ 14-16.) But the Court will not "bless a three-year clock for completion of the FOIA request." (Doc. 24 at 6.) The Tax Division must produce all responsive, non-exempt documents by July 18, 2024.

Accordingly, Defendant's Second Motion to Amend the Scheduling Order (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**. An amended FOIA case management and scheduling order will enter separately.

**ORDERED** in Fort Myers, Florida on April 23, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record